DAVID E. SANDLIN v. R. W. WARD, Executor, et als.

*Mistake—Quia Timet—Covenant not to Sue.*

1. Courts of equity do not correct mistakes in law, unless when other equitable elements occur, such as surprise, undue influence, imposition and the like.

2. A party is not entitled to relief on the ground of surprise, when he had the advice of counsel in doing the act complained of.

3. If a creditor by a binding contract, gives time to the principal debtor, or varies the contract in any other particular, the surety will be discharged, but when the principal debtor cannot enforce such covenant or contract against the creditor, as a defence or cause of action, the surety will not be discharged.

4. A covenant not to sue one obligor, does not release a co-obligor.

5. Where the plaintiff purchased a bond, executed by two obligors, and at the vendor's request executed to him a covenant not to sue one of the obligors, which covenant he was assured by his vendor would not operate as a discharge of the other obligor, and afterwards fearing that it would so operate, brought an action to have such covenant cancelled, *It was held*, that the complaint did not state a cause of action.

(*Winston* v. *Dalby*, 64 N. C., 299; *Russell* v. *Adderton*, Ibid., 417; *Phelps* v. *Cole*, 7 Ired., 262; *Graham* v. *Holt*, 3 Ired., 300, cited and approved).

CIVIL ACTION, tried before *Gudger, Judge*, at Spring Term, 1885, of ONSLOW Superior Court.

The plaintiff in his complaint alleged.

I. That Geo. J. Ward and Robert White, both of the county of Onslow, and both now dead, were on the 18th day of May, 1877, and for a long time before, since the 3rd November, 1856,

indebted to Williams Humphrey, now long since dead, by a note, a copy of which is as follows :

" $3,471.50. One day after date, we or either of us, promise to pay to Williams Humphrey, or bearer, three thousand four hundred and seventy one dollars and fifty cents, for value received. Nov. 3rd, 1856.

(Signed)      G. J. WARD, (Seal.)

"      ROBT. WHITE, (Seal.)"

II. That the said George J. Ward, died some time during the early part of the year A. D., 1860, leaving a last will and testament, in which are named three executors, but of whom only one, the plaintiff is informed and believes, the defendant Richard W. Ward, has ever acted or qualified as such executor, and has acted as such ever since the said last will was admitted to probate, some time in the year 1860.

That the said Williams Humphrey died some time during the year A. D. 1865, leaving a last will and testament, of which Lott W. Humphrey and D. A. Humphrey, sons of said Williams Humphrey, are the executors.

III. That the aforesaid Robert White, died intestate, sometime during the year A. D. 1867, and Jasper Etheridge was, as plaintiff is informed and believes, appointed his administrator, by the Court of Pleas and Quarter Sessions of Onslow county, some time during the year 1867, and said Etheridge acted as such administrator, until his death, some time in December, 1876, and after the death of said Etheridge, the defendant Henry Sandlin, Jr., was appointed administrator *de bonis non*, of the said Robert White.

IV. That the plaintiff, and one Silas W. Venters, had given their two joint and several notes to said White, dated the 9th day of January, A. D. 1866, each for one thousand dollars, and payable, the one of them nine years after date, and the other of them ten years after date, which notes were unpaid at the death of said White, and which still remain unpaid, but which the said Etheridge alleged were not found among the papers and effects of said White, and which have thus far not been forthcoming.

VI. The plaintiff avers, upon information and belief, that the said Robert White, died very little indebted, if at all, otherwise than by said Williams Humphrey note, and the entire assets of the estate of Robert White, other than the two notes given by the plaintiff and Silas W. Venters to said White, and which remain unpaid as mentioned in Article IV of this complaint, if they are available as assets, will not exceed, if they should equal in value, one hundred dollars.

VII. That at Spring Term, 1877, of the Superior Court of Onslow county, the said Lott W. Humphrey, who is a lawyer, a very intelligent business man, and who has ever been the active executor of his father, the said Williams Humphrey, offered to sell to the plaintiff, the said Williams Humphrey note. The negotiation, treaty or bargaining which finally resulted in the sale of said note to plaintiff, was conducted entirely and solely on the one side by the said Lott W. Humphrey, and on the other by the plaintiff. In the progress of it, the said Humphrey held out to plaintiff, as an inducement to purchase it, the great advantages the ownership of said note would give the plaintiff, as a debtor on the two notes given by the plaintiff and Venters to Robert White, and his ability to hold said claim, as a debt of the estate of Robert White. Influenced by this inducement, the plaintiff concluded with Lott W. Humphrey, a bargain for the purchase of said note, which agreement or bargain was to this effect: Lott W. Humphrey was then to cause to be passed or transferred to the plaintiff, the ownership of the note mentioned in said Article I, free and unincumbered, and, in consideration thereof, the plaintiff agreed to give his note for seventeen hundred and fifty dollars.

That after this bargain was concluded, and on the same day, and before the execution of his note to Humphrey, he requested him, as a favor, to execute an agreement not to sue the executor of George J. Ward on the Humphrey note. The said L. W. Humphrey assured the plaintiff that the agreement would not amount to a release or discharge of either party to said note, and

the plaintiff could, notwithstanding its execution, hold and use it as a set-off against the note the administrator of White held against him and Venters. Influenced by this assurance and advice, he consented to execute the agreement, as a favor to said Humphrey, believing, as he had been informed, that the estate of Ward was insolvent. The agreement was in the following words and figures:

"Whereas, I have purchased of D. A. and Lott W. Humphrey, executors of Williams Humphrey, a note of which the following is a copy:

"$3,471.50.   One day after date, we, or either of us, promise to pay to Williams Humphrey, or bearer, three thousand four hundred and seventy-one dollars and fifty cents, for value received.        (Signed),        G. J. WARD,   (Seal).
                                    ROBERT WHITE, (Seal).

Nov. 3rd, 1856.

"I hereby covenant not to sue the executors of George J. Ward thereon, this 18th day of May, 1877.
                        (Signed),   D. E. SANDLIN, (Seal)."

That there was no consideration whatever for this agreement, it was given purely as a favor to said Humphrey; that none of the parties intended that the instrument should, or could operate as a release to either White's or Ward's estates; that it was done in great haste, during court week, and either through surprise, ignorance or mistake, fails to carry out the intentions of the parties. Lest, therefore, the instrument should be held to be a release to the administrator of White, and thereby defeat plaintiff's recovery upon the Humphrey note, he invokes the aid of the equity jurisdiction of the Court, that it be adjudged that the instrument purporting to be a covenant, be delivered up and cancelled, and be declared by the Court to be a nullity, or reformed, so as to carry out the intentions of all parties thereto; and for such other relief as the premises may warrant.

The defendant Sandlin was removed from the office of administrator of Robert White; and —— Sandlin, appointed in his place, was permitted by the Court to make himself party defendant, and allowed to file an answer. The defendants all filed answers to the complaint, at very great length, admitting some of the allegations therein, and denying others. They admitted that Ward and White executed the note to Humphrey, but that White was only surety in the same. They pleaded the presumption of payment from the lapse of time, and that the action on the note was barred after seven years, under The Code. The case was not submitted to a jury, and no evidence adduced in support of any of the allegations or denials in the pleading. But the Court dismissed the action, because the complaint did not contain facts sufficient to constitute a cause of action; and the plaintiff appealed.

*Mr. W. R. Allen,* for plaintiff.
No counsel for defendants.

ASHE, J. (after stating the case). The action of the plaintiff is founded literally upon the principle of *quia timet,* without any of the elements of the equitable remedy recognized by the Court in such cases. With counsel present advising him and drawing the papers, he executed an instrument, by which he covenanted not to sue the executor of G. W. Ward, deceased, but he subsequently has his fears aroused, by consultation with his counsel, that he may possibly have, by mistake of law, executed an instrument by which the estates of both the obligors to the Humphrey bond, may be discharged from liability on the same, and he brings this action, invoking the equity jurisdiction of the Court, to correct the mistake. He does not allege that White was surety to the Humphrey -notes, but simply expresses an undefined apprehension that he may be, and if so, that he will set up the covenant in discharge of his liabilities. An action so vague and uncertain in its statements, cannot be sustained.

But even if the facts had been stated with more certainty and precision, the plaintiff would have been met by a principle of equity that would have defeated his application for relief. He alleges there was a mistake in drawing up the covenant, and it was not intended to release White from his liability on the note, and he asks the Court to correct the mistake. But the mistake is one of law, and not of fact, and a Court of Equity never corrects mere mistakes of law, save in exceptional cases, when the mistake is mixed up with other equitable elements, as in cases of imposition, misrepresentation, undue influence, misplaced confidence and surprise. Story's Eq. Jurisprudence, §§137 and 138.

The plaintiff says he was induced to execute the covenant through ignorance, surprise, mistake, and the confidence he had in Mr. Humphrey. His ignorance is no excuse, for every man is presumed to know the law, and we do not see how he can be relieved on the ground of surprise, for he had two counsel present, advising him at the time, one of whom drew up the covenant. Nor does his misplaced confidence in Mr. L. W. Humphrey afford him any excuse. When Mr. Humphrey offered to sell him the note for half price, and by looking at it he could see that it was more than ten years old, it should have put him on his guard, and greatly weakened the confidence he had in the advice of Mr. Humphrey, to favor whom he executed the covenant. The contract was made with Humphrey. Ward was not present, nor does it appear that he had any knowledge of the transaction, or that the covenant has even to this day been delivered to him by Humphrey. Then there was no misrepresentation by any one, and if any imposition, it was practiced upon him by Humphrey, who was a stranger to the subject intended to be affected by the covenant, and no imposition, or even fraud, practiced by him, could affect the relation between the plaintiff and the estates of White and Ward. The execution of the covenant then, was a pure mistake of the law, and when that is so, there is no ground for relief in a Court of Equity. In the case of *Bank of United States* v. *Daniel,* 12 Peters, 32, 55, 56,

when the main question was, whether a mistake of law was relievable in Equity, it being stripped of all other circumstances, the Court held it was not. *Hunt* v. *Rousmaniere*, 1 Peters 15; Story Eq. Ju., §§116 and 138; *Storrs* v. *Barker*, 6 John., Ch. 169–70.

But notwithstanding the plaintiff is not entitled to the relief demanded, it does not follow that he must lose his debt against the estate of White, unless he has lost his remedy by lapse of time, as a statutory bar. For, conceding that the covenant is valid as between the plaintiff and the executor of Ward, White was either a co-obligor or surety. If a co-obligor, the covenant cannot have the effect to discharge his estate. It was not a release, but only a covenant not to sue, which has been held by the Court not to discharge a co-obligor. *Winston* v. *Dalby*, 64 N. C., 299; *Russell* v. *Adderton*, *Ibid.*, 417.

But if White was surety, a different rule applies.

Under the last authority cited, it was held that such a covenant would discharge the sureties. And it is a general rule in equity, that where the creditor acts in such a way as directly to impair or destroy the relation of the principal to the surety, as by a release to the principal, or a covenant not to sue him, or issue execution, or giving further time, the surety is discharged. Adams' Eq., 106. But this rule is subject to exceptions, as when the creditor, in agreeing to give time, expressly reserves his remedies against the sureties, or when the agreement not to sue, or to give time, is of such a character, that the principal could have no remedy for its breach or non-performance against the creditor. In such cases, it is held the surety is not discharged, as when there is a parol promise not to sue, or to give time, without a consideration moving from the principal. The question in every such case, is whether the agreement to give time, or to vary the contract in any other particular, could have been enforced by the principal against the creditor, either as a defence or as a cause of action, for if it could not, there will be no discharge. *Rees* v. *Berington*, Hare & Wallace's Notes to Leading Cases in Equity—

Note referring to American decisions, and numerous American cases there cited in support of the doctrine. If that be the correct doctrine, and it is too well established by the overwhelming weight of authority to be questioned, then the estate of White is not discharged by the covenant not to sue the executor of Ward; for the covenant has no validity. The executor of Ward cannot maintain an action upon it. It is a covenant with no one, the covenantee is not named. It is of the essence of a bond to have an obligee as well as an obligor; it must show upon its face to whom it is payable, and the defect cannot be supplied by showing a delivery to a particular person. *Phelps* v. *Cole*, 7 Ired., 262; *Graham* v. *Holt*, 3 Ired., 300. To constitute a deed, there must be persons able to contract, and be contracted with, for the purpose intended by the deed; and also a subject matter to be contracted for; all which must be expressed by sufficient names. 2 Black. Com., 296.

In this view of the case, independent of the defects in the complaint, there was no necessity for seeking a reformation of the covenant. There is no error, and the judgment of the Superior Court is affirmed.

No error.                                                 Affirmed.