M. L. BRASWELL, RECEIVER OF THE PERPETUAL BUILDING AND LOAN ASSOCIATION, v. R. A. MORROW ET AL.

(Filed 31 January, 1928.)

1. **Negligence—Actions—Rights of Actions — Corporations — Officers — Duties and Liabilities.**

> Where the directors of a building and loan association are negligent of their duties and leave the management of its affairs in the hands of its secretary-treasurer, who, by maturing the stock at an earlier date than was safe, caused the association to become insolvent and finally to be placed in the hands of a receiver, and by other acts of mismanagement tending to the same result, and the directors by the observance of their duties should have been aware of the conditions existing: *Held*, a cause of action arises to the receiver upon a joint tort, in behalf of the stockholders and creditors of the corporation.

2. **Torts—Joint Tort-Feasors—Liabilities—Release.**

> Joint *tort-feasors* cannot relieve one of their number from liability on a joint tort by executing a release to him.

3. **Same—Receivers.**

> A release of one joint *tort-feasor* by the receiver of a corporation that has caused loss by the tortious act, in full settlement of all claims of whatsoever nature and kind that the corporation has against him (or his estate) is sufficiently comprehensive to include not only the personal liability of the one released, but of them all guilty of the joint tortious act, and when founded upon a sufficient consideration will so operate. The difference between a release and a covenant not to sue distinguished by BROGDEN, J.

CIVIL ACTION, before *Oglesby, J.*, at August Term, 1927, of UNION.

The plaintiff was duly appointed receiver of the Perpetual Building and Loan Association in August, 1923. The defendants, Morrow, Lee and Houston, were the directors of said building and loan association.

S. O. Blair was a director and died before the suit was brought, and his administrators are also defendants.

The plaintiff alleged that the Perpetual Building and Loan Association had for many years been engaged in the business of a building and loan association under the provision of the laws of North Carolina. B. C. Ashcraft was a director of the association at the time of his death, which occurred about 11 November, 1921. For many years prior to his death Mr. Ashcraft had been secretary and treasurer of the association. Paragraph four of the complaint is as follows: "That the defendants, as hereinbefore set out, entrusted and turned over the entire management of the association to B. C. Ashcraft, whom they elected and annually reëlected as secretary and treasurer of said association, and although they had, or by the exercise of ordinary care and prudence could have at any time had, information by the most superficial examination into the affairs of the association that the said secretary and treasurer was persistently pursuing a policy in the maturing of the stock of the association that would inevitably result in its insolvency, took no action to remedy the situation, but permitted the said secretary to continue the maturing of stock before it had reached maturity until the assets of the corporation were so depleted that its stock was valueless, and a receivership to wind up its affairs necessary."

Paragraph five of the complaint is as follows: "That the defendants knew, or by the exercise of ordinary care and prudence in the performance of their duties as directors should have known, that the secretary and treasurer was maturing the stock of the association before it reached par, that is, paying out one hundred dollars on each share of stock at the end of a period of time insufficient for it to have reached said value by the payment of the weekly dues of the stockholder, and although this action on the part of the secretary and treasurer was repeatedly called to the attention of the defendants in the annual audits of the affairs of the association by the auditors and accountants employed to perform such service, the defendants by this gross neglect of their duties and other acts of negligence and inattention to the affairs of the association, as will be hereinafter set out, permitted the association to become insolvent and the stockholders and creditors thereof to suffer loss and sustain damages as will be hereinafter more fully alleged."

Subsequent allegations of the complaint allege that the defendants as directors of said association failed to hold or attend meetings as required by law and the by-laws, "but permitted the entire business of the association to be managed, controlled and supervised by the secretary and treasurer, without any restraint or direction whatever from the directors." It was further alleged that the defendants as directors failed to require the treasurer to give a bond or to annually examine his books or to require him to keep a proper set of books, and that said de-

fendants negligently and carelessly permitted the secretary and treasurer to make loans on inadequate security and to fail to collect accrued interest upon loans made by the association.

It further appears from the record that on 12 December, 1923, the plaintiff, receiver, instituted an action against Scott-Charnley & Co., alleging in substance that the said Scott-Charnley & Co. were employed by the building and loan association to audit its books from time to time, and that said auditors carelessly and negligently failed to make a proper audit or to submit an accurate report of the condition of the association, and that "the officers and directors of said association, having no special training in work of this character, relied upon the correctness of the several reports made to them of the books by the defendant, as they had a right to do." In the complaint the plaintiff asked for $13,000 damage against Scott-Charnley & Co., which was the amount of the loss sustained by the association.

After the suit against the present defendants was instituted the plaintiff, as receiver, settled with Scott-Charnley & Co. for the sum of $1,043.

On 14 March, 1924, the plaintiff, as receiver of the Perpetual Building and Loan Association, brought a suit against Mary B. Ashcraft as administratrix of B. C. Ashcraft. No complaint was ever filed in this suit, but on 21 May, 1924, Mary B. Ashcraft, administratrix of B. C. Ashcraft, paid to the plaintiff as receiver the sum of $1,250, and took from him a release as follows: "Received from Mary Blair Ashcraft, administratrix of B. C. Ashcraft, deceased, the full and just sum of $1,250 in full settlement of all claims of whatsoever nature and kind that the Perpetual Building and Loan Association has against the said estate, and we hereby consent that said administratrix may be forever discharged, and furthermore agree to take a nonsuit in the action instituted against said estate. This 21 May, 1924. Perpetual Building and Loan Association. By M. L. Braswell, Receiver. By Vann & Milliken, Attorneys."

The receiver was examined as a witness. He testified that he presented a claim against the estate of Mr. Ashcraft, composed of various clerical errors made by him as secretary and for payment of installments that were entered on passbooks, but not recorded in the secretary's office. He further testified that the whole claim was denied by the Ashcraft estate. On cross-examination the receiver said: "I did not say that it was the same thing that I am now trying to collect out of these defendants. It may be a part of the same thing. I executed the receipt and release to the estate of B. C. Ashcraft."

Issues of negligence as to each director were submitted to the jury. These issues were answered against all the defendants except D. A. Houston, and damages were assessed at $6,000. The defendants tendered appropriate issues as to whether the release by the plaintiff of the

estate of Ashcraft and the settlement with Scott-Charnley & Co. operated as a release and discharge of the present defendants. The court refused to tender said issues and the defendants excepted.

*Vann & Milliken for plaintiff.*
*John C. Sikes for defendants.*

BROGDEN, J. The determinative question of law is this: Does a formal release of one director of a building and loan association, who was also secretary-treasurer and general manager thereof, discharge the other directors from liability for failure to perform their official duties? The law is: "Directors and managing officers of a corporation are deemed by the law to be trustees, or *quasi*-trustees, in respect to the performance of their official duties incident to corporate management, and are therefore liable for either wilful or negligent failure to perform their official duties. Therefore, if there is a loss of the corporation's assets, caused and brought about by the negligent failure of its officers to perform their duties, the corporation, or its receiver, in case of insolvency, can maintain an action therefor." "However, the officers of a corporation are not, as a rule, responsible for mere errors of judgment, nor for slight omissions from which the loss complained of could not have reasonably resulted." *S. v. Trust Co.,* 192 N. C., 246; *Besseliew v. Brown,* 177 N. C., 65.

A careful perusal of the complaint in this cause will disclose that the loss sustained by the corporation resulted from two primary causes: (a) The negligent failure of Ashcraft, the secretary and treasurer, and a director of the corporation, to properly perform his official duties, in that he was placed in sole and exclusive control of the management of the corporation, and carelessly and negligently failed to keep proper records or to make a proper accounting, and particularly that he carelessly and negligently matured the stock of the corporation which ultimately produced insolvency. (b) That the directors carelessly and negligently failed to supervise or restrain the said secretary and treasurer or to require the proper performance of his official duties.

It is apparent from the complaint that both Ashcraft and the other directors failed to perform positive duties imposed by law. Therefore, they coöperated in bringing about insolvency. Hence they are joint *tort-feasors.* This was the status of the parties when the plaintiff, receiver, brought a suit against the estate of Ashcraft, and this was also the status of the parties when the plaintiff executed and delivered for a valuable consideration the release of the estate of Ashcraft. The release states that the money is received "in full settlement of all claims of whatsoever nature and kind that the Perpetual Building and Loan Asso-

ciation has against the said estate." This language is comprehensive and inclusive. The plaintiff insists that the release covered only items due by Ashcraft to the corporation as secretary and treasurer, arising from errors made by him and collections which he had not turned over to the corporation, but the paper-writing, upon its face, purports to cover "all claims of whatsoever nature and kind." This language not only includes amounts collected by Ashcraft and not accounted for, but also his liability as a director for negligent failure to perform his official duties. This Court has declared in *Howard v. Plumbing Co.,* 154 N. C., 224, that: "It is well settled that a release of one or more joint *tort-feasors* executed in satisfaction for an injury is a discharge of them all, on the ground that the party can have but one satisfaction for his injury." *Brown v. Louisburg* 126 N. C., 701; *Burns v. Womble,* 131 N. C., 173; *Smith v. R. R.,* 151 N. C., 479; *Gregg v. Wilmington,* 155 N. C., 23; *Sircey v. Rees' Sons,* 155 N. C., 296. The legal effect of a formal release is quite different from a covenant not to sue. A covenant not to sue one joint *tort-feasor* or one coöbligor does not have the effect of releasing other *tort-feasors* or coöbligors. *Sandlin v. Ward,* 94 N. C., 496; *Mason v. Stephens,* 168 N. C., 370. Therefore, when the plaintiff, as receiver, released Ashcraft for a valuable consideration, this release, under the law, inures to the benefit of the other directors, and the plaintiff is not entitled to recover.

The plaintiff contends, however, that the suit brought by him against the estate of Ashcraft was intended to charge Ashcraft as secretary and treasurer in failing to account for money which he had received and failed to pay into the treasury. As no complaint was filed, this fact does not appear from the record; but, conceding that the plaintiff intended the suit against Ashcraft to cover such items alone, the fact remains that the release given contains language which covers all liability, whether arising upon contract or tort. The plaintiff relies upon *Besse-liew v. Brown,* 177 N. C., p. 65. This case involved the mismanagement of a building and loan association. It appeared that the secretary, who had been entrusted with complete charge and management of the company, had embezzled over $12,000 of the assets, thus causing insolvency. The directors had accepted a mortgage for $6,000 of the shortage and thereafter canceled this mortgage upon receipt of the sum of $3,000. No question of a formal release was involved in the case. Indeed, *Hoke, J.,* in referring to accepting $3,000 in payment of a mortgage debt of $6,000, said: "This may have been a mere error of judgment on their part, or it may have been the best course to take under the circumstances presented, but we fail to see how it could inure to the protection of defendants, except in reduction of the damages, if any, that may be shown against them, and this effect is allowed

it in the complaint." It also appears in the *Brown case, supra,* that the directors themselves settled with Hammond, the defaulting secretary. Certainly, joint *tort-feasors* cannot relieve themselves from liability by making a settlement with or releasing one of their own number. In the present case the release was executed by the receiver, who was an officer of the court and charged with the duty of protecting the interests of stockholders and creditors. The case of *Slade v. Sherrod,* 175 N. C., 346, relied upon by the plaintiff, is not applicable for the reason that there were two separate and distinct causes of action involved, and the release, upon its face, purported to settle only one of said causes of action, leaving the other to be determined according to law.

Upon the whole record, and after a careful consideration of the merits of the appeal, we are of the opinion that the plaintiff is not entitled to recover.

Reversed.