**VF JEANSWEAR LIMITED PARTNERSHIP,**
Plaintiff,

v.

**Luis MOLINA, Defendant.**

No. CIV.1:03 CV 00487.

United States District Court,
M.D. North Carolina.

June 9, 2004.

J. Mark Sampson, Womble Carlyle Sandridge & Rice, Winston–Salem, NC, James M. Powell, Womble Carlyle Sandridge & Rice, Greensboro, NC, for Plaintiff and Counter–Defendant.

Seth R. Cohen, Smith James Rowlett & Cohen, Greensboro, NC, for Defendant and Counter–Claimant.

### *MEMORANDUM OPINION*

BULLOCK, District Judge.

This matter arises from the execution of a severance agreement between Plaintiff VF Jeanswear Limited Partnership ("VF Jeanswear") and Defendant Luis Molina ("Molina"), a former employee of VF Jeanswear. VF Jeanswear brings claims for common law breach of contract as well as for unfair and deceptive trade practices pursuant to North Carolina General Statute § 75–1.1. Molina timely removed the action pursuant to 28 U.S.C. §§ 1332 and 1441 and filed a counterclaim for breach of contract.

The case is now before the court on the parties' cross motions for summary judgment. The court will grant VF Jeanswear's motion for summary judgment on its breach of contract claim and deny Moli-

na's motion for summary judgment on this claim. The court will grant summary judgment for VF Jeanswear on Molina's counterclaim. The court also will grant Molina's motion for summary judgment on VF Jeanswear's unfair and deceptive trade practices claim. Finally, the court will allow VF Jeanswear to recover reasonable attorney's fees in connection with its breach of contract claim but will disallow recovery of punitive damages. VF Jeanswear's damage award remains to be determined.

## FACTS

VF Jeanswear manufactures jeans and other apparel.[1] From 1987 to 2001, Molina worked as a general manager in two of VF Jeanswear's manufacturing plants. Molina initially managed a VF Jeanswear facility in Puerto Cortes, Honduras. In 1998, Molina was transferred to another plant in Chihuahua, Mexico. Molina managed the Mexican facility until 2001, when he was terminated as part of a reduction-in-force.

In connection with the reduction-in-force, VF Jeanswear offered Molina a severance agreement. Under the agreement, VF Jeanswear would provide Molina with severance pay, a housing allowance, stock option rights, specific relocation expenses, and other enumerated benefits. In exchange for these benefits, Molina would promise to release any of his potential claims against the company. Specifically, the agreement states:

In partial consideration of the performance by the Company of its obligations under this Agreement and other good and valuable consideration, Employee does hereby for himself, his heirs, executors, administrators and assigns, forever release, remise and discharge the Com-

pany, Operadora Lambe, S.A. de C.V., Wrangler de Chihuahua, S.A. de C.V., VF Services, Inc., Blue Bell, Inc., their officers, directors, parents, subsidiaries, affiliates and their officers and directors and their successors and assigns, from and against any claims and causes of action which he has, had or may have had arising out of his employment with the Company or otherwise relating to or arising out of any relationship or status he may have had in the past with the Company, Operadora Lambe, S.A. de C.V., Wrangler de Chihuahua, S.A. de C.V., VF Services Inc., Blue Bell Inc. or any of its affiliates or subsidiaries. The parties specifically contemplate that this release covers ... [claims under] federal, state or local laws or ordinances, Mexican and Honduras laws, and any common law claims under tort, contract or any other theories now or hereafter recognized.

.　　.　　.　　.　　.

Employee acknowledges that he has received all pay and benefits to which he was entitled in connection with that employment, and that no other monies or benefits are owed to him other than those benefits for which he is eligible under this agreement, agreed in accordance with the terms and provisions thereof. Therefore, Employee grants to the Company, Operadora Lambe, S.A. de C.V., Wrangler de Chihuahua, S.A. de C.V., VF Services Inc., Blue Bell Inc. or any of its affiliates or subsidiaries the fullest and broadest release in accordance with the laws of United States, Mexico, and Honduras, and not reserving any action or right to be exercised

**1.** VF Jeanswear is incorporated in Delaware and maintains its principal place of business in Greensboro, North Carolina. Molina is a citizen and current resident of Honduras who has obtained permanent residence status in the United States and maintains an address in Texas.

against them in the future for any concept.

Employee acknowledges that this agreement is the exclusive agreement for benefits to be paid to Employee by the Company. As a condition of accepting benefits under this agreement, Employee further agrees not to bring legal action in any other forum outside the United States for any payment or other cause of action which Employee may be entitled to pursue under governing law. Should Employee pursue benefits or legal action in another country specially against Operadora Lambe, S.A. de C.V., Wrangler de Chihuahua, S.A. de C.V., VF Services Inc. and Blue Bell Inc. Employee's benefits, including the offer of the Company to move Employee, his family, and his household goods, shall be null and void.

(Compl. Ex. A, Employment Voluntary Termination Agreement & Release at 4.1.)

VF Jeanswear presented the severance agreement to Molina on November 15, 2001, and requested his response within four weeks. A few days later, Molina wrote a letter to VF Jeanswear. He notified the company of his intent to sign the agreement but sought to obtain additional benefits, including meals, car rental, relocation and insurance for two cars, relocation to a country other than Honduras, and an extension of the relocation deadline. Molina inquired about these benefits and concluded his letter with his "hope [that] each clarification to the questions above is favorable to me, because no favorable reply to my questions ... could affect the Company negatively." (Pl.'s Mem. Supp. Mot. Summ. J., Dep. of Luis Molina, Ex. 2, Letter from Molina to Telles, Nov. 19, 2001.)

On November 22, 2001, Molina met with an attorney for VF Jeanswear to discuss his severance package. At this time, Molina expressed his desire to obtain additional severance benefits pursuant to Honduran law.[2] A few days after the meeting, Molina wrote another letter to VF Jeanswear. Once more he informed the company that he intended to sign the severance agreement. However, Molina reiterated his request to be given additional benefits under Honduran law, stressing his belief that "the Company cannot simply terminate me and leave me and my family unprotected in a foreign country" and that "I provided [the company] with many recommendations on how to proceed before legal situations. It proved that I never gave a wrong recommendation.... I would recommend that what I ask for is granted." (Pl.'s Mem. Supp. Mot. Summ. J., Molina Dep. Ex. 3, Letter from Molina to Telles, Nov. 26, 2001.)

Molina and a VF Jeanswear attorney met again on December 5, 2001, this time with the Human Resources manager. During this meeting, VF Jeanswear representatives addressed Molina's concerns regarding his request for additional benefits. They informed Molina that if he accepted VF Jeanswear's severance offer, he would receive only those benefits enumerated in the severance agreement. VF Jeanswear representatives made clear that if Molina did not accept the offer, he would not receive a severance package or any further remuneration. That day, Molina signed the severance agreement.

After executing the agreement, Molina corresponded with VF Jeanswear regarding the administrative details of his relocation and receipt of benefits. At this time,

---

**2.** Though Molina was a citizen of Honduras, he was not working in Honduras at the time of his severance from VF Jeanswear.

Molina did not express dissatisfaction with his severance package or attempt to rescind the agreement. However, Molina again requested additional benefits, asking that VF Jeanswear pay to transport his car to Honduras and provide insurance for the trip. As an accommodation to Molina, VF Jeanswear agreed to the proposal and also provided Molina with an increased allotment for hotel costs. The company cautioned Molina that "these additional considerations will constitute the limit of our willingness to provide any benefits above and beyond those contained in your severance agreement." (Pl.'s Mem. Supp. Mot. Summ. J., Molina Dep. Ex. 7, E-mail from Tucker to Molina, July 3, 2002.) Molina responded, "Thank you for this effort" and e-mailed VF Jeanswear his bank account number to deposit the funds. (Pl.'s Mem. Supp. Mot. Summ. J., Molina Dep. Ex. 7, E-mail from Molina to Tucker, July 3, 2002.)

Pursuant to the severance agreement, VF Jeanswear provided Molina severance pay totaling $103,857.48. VF Jeanswear also paid to move and insure Molina's household goods and to fly Molina's family from Mexico to Honduras. Consistent with the parties' subsequent negotiations, the company also covered the insurance and transportation costs for Molina's car and provided $1,800.00 for Molina's hotel expenses. In sum, Molina's severance package totaled over $140,000.00. Molina does not dispute that he received and accepted all of the benefits provided in the severance agreement as well as additional funding for his car and hotel costs.

On February 5, 2003, shortly after he had received all benefits under the severance agreement, Molina filed a lawsuit against a VF Jeanswear affiliate, Blue Bell de Honduras S. de R.L., in the Labor Court for Puerto Cortes, Honduras. In that suit, Molina alleged that Blue Bell de Honduras wrongfully terminated him and

that he was entitled to additional severance benefits under Honduran law. The Labor Court denied Molina relief, but the Labor Court of Appeals reversed the judgment and entered judgment for Molina in the amount of $89,451.52. The case is currently pending before the Honduran Supreme Court. On April 7, 2003, VF Jeanswear filed the present action against Molina.

## DISCUSSION

### I. Standard of Review

Summary judgment must be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The moving party bears the burden of persuasion on the relevant issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party may survive a motion for summary judgment by producing "evidence from which a [fact finder] might return a verdict in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When the motion is supported by affidavits, the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *See* Fed.R.Civ.P. 56(e); *see also Cray Communications, Inc. v. Novatel Computer Sys., Inc.*, 33 F.3d 390, 393–94 (4th Cir.1994) (moving party on summary judgment motion can simply argue the absence of evidence by which the non-movant can prove her case). In considering the evidence, all reasonable inferences are to be drawn in favor of the non-moving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [fact finder] could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. 2505.

## II. *Effect of Honduran Judgment on VF Jeanswear's Claims*

As an initial matter, Molina contends that principles of international comity prevent this court from adjudicating VF Jeanswear's claims. Molina posits that the courts of Honduras already have decided the relevant issues in his favor. Accordingly, Molina reasons that the court should abstain from hearing this matter because a judgment against him would directly contravene Honduran law.

 Foreign judgments are not entitled to full faith and credit under the United States Constitution. Instead, the effect of these judgments is determined by principles of comity. *See Guinness PLC v. Ward,* 955 F.2d 875, 883 (4th Cir.1992). Comity is defined as "the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protections of its laws." *Hilton v. Guyot,* 159 U.S. 113, 164, 16 S.Ct. 139, 40 L.Ed. 95 (1895). In evaluating the effect of the Honduran judgments on this action, the court sitting in diversity applies North Carolina law. *See Guinness,* 955 F.2d at 883. North Carolina has codified its scheme for recognizing foreign judgments in the North Carolina Foreign Money Judgments Recognition Act, N.C. Gen.Stat. § 1C–1800 *et seq.*

The Act applies to money judgments rendered by governmental units other than the United States, the individual states, and United States territories and possessions. N.C. Gen.Stat. § 1C–1801(2). A judgment is "final" even if it is subject to appeal or an appeal is pending. N.C. Gen.Stat. § 1C–1802. Under the Act, a foreign judgment is not conclusive if it was rendered by a court lacking due process protections, personal jurisdiction over the

defendant, or subject matter jurisdiction. N.C. Gen.Stat. § 1C–1804(a). The Act also provides that a foreign judgment need not be recognized if:

(1) The defendant in the proceedings in the foreign court did not receive notice of the proceedings in sufficient time to enable the presentation of a defense; (2) The judgment was obtained by fraud; (3) The cause of action on which the judgment is based is repugnant to the public policy of this State; (4) The judgment conflicts with another final and conclusive judgment; (5) The proceedings in the foreign court were contrary to an agreement between the parties under which the dispute in question was to be settled out of court; (6) In the case of jurisdiction based on personal service, the foreign court was a seriously inconvenient forum for the trial of the action; or (7) The foreign court rendering the judgment would not recognize a comparable judgment of this State.

N.C. Gen.Stat. § 1C–1804(b).

 Of importance in this case is § 1C–1804(b)(5), the Act's provision regarding settlement agreements. Molina asserts that the Act does not apply to his claims because he signed a severance agreement, not a settlement agreement. However, the language of the agreement clearly evidences Molina's promise to "release, remise, and discharge ... any claims and causes of action which he has, had or may have ever had ... not reserving any action or right to be exercised against [the company] in the future for any concept." (Compl. Ex. A, Employment Voluntary Termination Agreement & Release at 4.1.) The severance agreement further states that the

Agreement may be treated as a complete defense to any legal, equitable, or administrative action that may be brought, instituted, or taken by Employ-

ee ... and shall forever be a complete bar to the commencement or prosecution of any claim, demand, lawsuit, charge, or other legal proceeding of any kind against the Company ... or any of its affiliates or any related companies and subsidiaries.

(Compl. Ex. A, Employment Voluntary Termination Agreement & Release at 4.4.)

Whether the agreement is designated a severance or settlement agreement, it settles all of Molina's potential claims against VF Jeanswear. As a result, the proceeding in the Honduran Labor Court was contrary to the binding agreement of the parties prohibiting Molina from bringing any employment-related claims against VF Jeanswear. Pursuant to North Carolina General Statute § 1C–1804(b)(5), the court need not recognize the Honduran judgments. *See Nicor Int'l Corp. v. El Paso Corp.,* 292 F.Supp.2d 1357, 1371 (S.D.Fla. 2003) (refusing to recognize Dominican judgment under Florida's Uniform Out-of-Country Money–Judgments Recognition Act because the Dominican proceeding was contrary to a binding arbitration provision in the parties' agreement).

Molina contends that the North Carolina Foreign Money Judgments Recognition Act "has absolutely nothing to do with the facts of this case" because Molina is not seeking to enforce his Honduran judgment in North Carolina. (Def.'s Mem. Reply Pl.'s Resp. Def.'s Mot. Summ. J. at 7.) However, the Act does not govern the enforcement of foreign judgments. Rather, it pertains only to whether a court should recognize the judgment. Section 1C–1803 expressly states that once a foreign judgment is recognized under the Act, "[t]he foreign judgment is enforceable in the manner set forth in Article 17 of this Chapter," the Uniform Enforcement of Foreign Judgments Act. N.C. Gen.Stat. § 1C–1803; *see* N.C. Gen.Stat. § IC–1701 *et seq.* The Fourth Circuit has indicated that "under [the Uniform Foreign Money–Judgments Recognition Act] questions of whether a judgment should be recognized are distinct and separate inquiries from those concerning whether such a judgment once recognized is entitled to enforcement." *Guinness,* 955 F.2d at 889 (discussing the Act as applied in Maryland); *see also Electrolines, Inc. v. Prudential Assurance Co., Ltd.,* 260 Mich.App. 144, 677 N.W.2d 874, 882 (2004) ("[T]he [Uniform Foreign Money–Judgments Recognition Act] is not an enforcement act. [It] only serves the purpose of providing a court with a means to recognize a foreign money judgment."). Thus, Molina's argument is unavailing, and the court declines to recognize the judgments of the Honduran courts in determining the outcome of this case.

### III. *VF Jeanswear's Breach of Contract Claim*

■ "[A] breach of contract occurs when a party fails to perform a contractual duty that has become absolute." *Salvaggio v. New Breed Transfer Corp.,* 150 N.C.App. 688, 692, 564 S.E.2d 641, 644 (2002); *Millis Constr., Co. v. Fairfield Sapphire Valley, Inc.,* 86 N.C.App. 506, 510, 358 S.E.2d 566, 569 (1987). VF Jeanswear alleges that Molina breached the severance agreement by filing suit against Blue Bell de Honduras, a VF Jeanswear affiliate, in the Honduras Labor Court. As the basis for its claim, VF Jeanswear references Section 4 of the severance agreement, entitled "Release."

■ A release is an agreement to relinquish a claim or right to the person against whom the claim exists or the right is to be enforced or exercised. *Fin. Servs. of Raleigh, Inc. v. Barefoot,* 594 S.E.2d 37, 41 (N.C.App.2004) (citing 66 Am.Jur.2d Release § 1 (2001)). When a release is executed in exchange for valuable consid-

eration, the release provides a complete defense to an action for damages. *Talton v. Mac Tools, Inc.*, 118 N.C.App. 87, 90, 453 S.E.2d 563, 565 (1995). North Carolina courts consistently have upheld and enforced valid release agreements. *See, e.g., McNair v. Goodwin,* 262 N.C. 1, 8, 136 S.E.2d 218, 223 (1964) (affirming superior court entry of judgment against plaintiff who signed "Release of All Claims" because "the plain provisions of the release are sufficient to bar any manner of claim or action ... which [plaintiff] may assert"); *Barefoot,* 594 S.E.2d at 41 ("[I]f FSR's current claims fall within the scope of the 1999 release, then FSR is barred from recovering on those claims."); *Tellado v. Ti–Caro Corp.,* 119 N.C.App. 529, 534–35, 459 S.E.2d 27, 31 (1995) (affirming superior court grant of summary judgment to employer in retaliatory discharge case based on former employee's severance and release agreement); *Mac Tools,* 118 N.C.App. at 91, 453 S.E.2d at 565 (affirming summary judgment for defendants on breach of contract claim because release plaintiffs signed completely barred their suit); *Worsham v. Triones Plastics, L.L.C.,* 151 N.C.App. 752, 567 S.E.2d 466, 2002 WL 1803938, at \*1–3 (2002) (unpublished) (affirming judgment for defendant on plaintiff's breach of lease agreement claim because plaintiff signed valid agreement "releas[ing], acquit[ting], and forever discharg[ing] Lessee" of all claims against him).

■ Here, in exchange for approximately $140,000.00 of severance benefits, Molina promised to

> forever release, remise and discharge the Company, Operadora Lambe, S.A. de C.V., Wrangler de Chihuahua, S.A. de C.V., VF Services, Inc., Blue Bell, Inc., their officers, directors, parents, subsidiaries, affiliates and their officers and directors and their successors and assigns, from and against any claims and causes of action which he has, had or may have ever had ... arising out of his employment with the Company or otherwise relating to or arising out of any relationship or status he may have had ... in accordance with the laws of United States, Mexico and Honduras, and not reserving any action or right to be exercised against them in the future for any concept.

(Compl., Ex. A, Employment Voluntary Termination Agreement & Release at 4.1.) Under the plain language of the contract, Molina has relinquished his right to bring a claim against VF Jeanswear or its affiliates.

Molina does not contest the release he signed or address its effects on his Honduran lawsuit. Instead, Molina argues that his action does not constitute a breach of contract because he never promised not to sue Blue Bell de Honduras. Molina asserts that North Carolina distinguishes between covenants not to sue and releases, citing the 1928 tort case of *Braswell v. Morrow,* 195 N.C. 127, 141 S.E. 489 (1928). He notes that "a covenant not to sue is an affirmative act not to do something, while a release is a relinquishment of a right."[3] (Mem. Supp. Def.'s Mot. Summ. J. at 9.) Molina maintains that VF Jeanswear's breach of contract claim must fail because he never made an affirmative promise to refrain from filing suit against the Blue Bell de Honduras division of VF Jeanswear.

---

**3.** The Uniform Contribution Among Tort-feasors Act, N.C. Gen.Stat. § 1B–1 *et seq.,* abolishes the common law distinction between releases and covenants not to sue. *See* N.C. Gen.Stat. § 1B–4. The parties dispute whether the Act is applicable in this instance. The court declines to address this issue because it finds that the severance agreement contains a covenant not to sue as well as a release.

To support his argument, Molina cites this language in the severance agreement:

As a condition to accepting benefits under this agreement, Employee further agrees not to bring legal action in any other forum outside the United States for any other payment or other cause of action which Employee may be entitled to under governing law. Should Employee pursue benefits or legal action in another country specially against Operadora Lambe, S.A. de C.V., Wrangler de Chihuahua, S.A. de C.V., VF Services Inc. and Blue Bell Inc. Employee's benefits, including the offer of the Company to move Employee, his family, and his household goods, shall be null and void.

(Compl. Ex. A, Employment Voluntary Termination Agreement & Release at 4.1.) Molina characterizes this language as a "covenant not to sue" and posits that he expressly covenanted not to sue only the companies referenced in the second sentence. While the court agrees that this language creates a covenant not to sue, the covenant will not be construed as narrowly as Molina suggests.

■ When the terms of a contract are "clear and only one reasonable interpretation exists, the courts must enforce the contract as written." *Woods v. Nationwide Mut. Ins. Co.,* 295 N.C. 500, 506, 246 S.E.2d 773, 777 (1978). The first sentence Molina references is an affirmative promise "not to bring legal action" in any foreign forum under any foreign law. It appears one sentence after the agreement to release VF Jeanswear and mandates that Molina "further agrees" not to sue for additional payment. (Compl. Ex. A, Employment Voluntary Termination Agreement & Release at 4.1.) The second sentence voids Molina's benefits entirely in the event that he sues specified divisions of VF Jeanswear, including the entities where he allegedly worked.[4] Read in its ordinary sense and in the context of the release preceding it,[5] the provision operates as a covenant not to sue and grants VF Jeanswear a right to recover its $140,000.00 outlay should Molina sue certain company divisions. Molina's subjective belief that he never promised not to sue Blue Bell de Honduras is insufficient to override the plain meaning of the parties' agreement. "Where a written agreement is explicit, the court must so declare, irrespective of what either party thought the effect of the contract to be." *McNair,* 262 N.C. at 8, 136 S.E.2d at 223. By filing suit against a VF Jeanswear affiliate in Honduras, Molina breached his agreement not to bring legal action against the company in any forum outside the United States. (*See* Compl. Ex. A, Employment Voluntary Termination and Release at 4.1.)

4. Though Molina admits that he worked at the Wrangler de Chihuahua, S.A. de C.V. plant in Mexico from 1998 to 2001, the parties disagree about which VF Jeanswear division employed Molina prior to his Mexican appointment. Molina claims to have worked for Blue Bell de Honduras, while VF Jeanswear contends that he worked for Blue Bell, Inc. Blue Bell, Inc. and Blue Bell de Honduras are distinct affiliates of VF Jeanswear.

5. Molina contends that the covenant not to sue must be limited by the sentence following it. He reasons that if it is not so limited, the covenant would completely prohibit him from bringing any legal action in any forum against any individual for any cause of action at any time. (Mem. Supp. Def.'s Mot. Summ. J. at 10.) The court agrees that the sentence should not be considered in isolation or construed in this manner. At most, the second sentence provides for forfeiture of Molina's severance benefits should he sue one of the specified entities in another country. The earlier portions of the severance agreement release VF Jeanswear and all of its affiliates from all claims in all courts under federal, state, local, Honduran, and Mexican law. VF Jeanswear is seeking only to enforce this release and to recover damages resulting from the breach, not to be reimbursed for the severance benefits already paid.

Molina also contests the validity of the severance agreement on grounds of duress. To demonstrate the existence of duress, Molina must proffer evidence that VF Jeanswear's conduct was unlawful or wrong, that Molina was coerced into signing the agreement, and that Molina's consent to the agreement was involuntary because VF Jeanswear prevented Molina from exercising his free will. *See Radford v. Keith,* 160 N.C.App. 41, 44, 584 S.E.2d 815, 817–18 (2003).

Molina characterizes his situation as "an intolerable choice: Either he sign an Agreement which he had repeatedly complained was unfair and unlawful under Honduran law, or he would be stranded in a foreign country without pay and the ability to move his family back home." (Mem. Supp. Def.'s Resp. Pl.'s Mot. Summ. J. at 11.) At his deposition, Molina explained that

> [I]f I didn't sign the contract, I wasn't going to receive—besides my normal compensation, which is bonus and everything included in the contract, the other cash considerations and employee benefits stated in the contract .... I wasn't going to receive money, and I didn't have money. So the threat to my family was that if I don't receive—if I didn't sign the contract, I wouldn't receive money, so I couldn't support my family in the most basic needs.

(Mem. Supp. Def.'s Resp. Pl.'s Mot. Summ. J., Ex. A, Dep. of Luis Molina at 64.)

██ Regrettably, Molina faced the financial uncertainty experienced by many workers terminated through a reduction-in-force. However, the fact that Molina was not financially secure does not establish that VF Jeanswear's offer was wrongful or that Molina's acceptance was coerced. *See, e.g., Lundy v. Airtouch Communications, Inc.,* 81 F.Supp.2d 962, 966–67 (D.Ariz.1999) (no duress in situation where employee "faced a difficult eco-nomic choice" between signing severance agreement or retaining his rights against employer); *Constant v. Cont'l Tel. Co.,* 745 F.Supp. 1374, 1384 (C.D.Ill.1990) (duress defense not available when employee's choice was to sign severance agreement and receive benefits or refuse to sign and receive nothing); *Zeilinger v. SOHIO Alaska Petroleum Co.,* 823 P.2d 653, 658 (Alaska 1992) (employee's burdensome financial circumstances were of her own making and not sufficient to invalidate her severance agreement on grounds of duress); *Blubaugh v. Turner,* 842 P.2d 1072, 1075–76 (Wyo.1992) (no duress where employee would receive severance payment only if he signed severance agreement).

Further, there is no evidence showing that VF Jeanswear coerced Molina into signing the agreement or took any action to negate the voluntary nature of its offer. Conversely, VF Jeanswear's offer remained open for four weeks after Molina received it, which is sufficient time for Molina to consider the strength of any potential claims he harbored against the company and make an informed decision about his options. During the four-week period, Molina voluntarily informed VF Jeanswear on two occasions that he wished to sign the agreement. (Pl.'s Mem. Supp. Mot. Summ. J., Molina Dep. Ex. 2, Letter from Molina to Telles, Nov. 19, 2001; Molina Dep. Ex. 3, Letter from Molina to Telles, Nov. 26, 2001.) A VF Jeanswear attorney arranged two meetings with Molina to address his questions and concerns. There is no indication that VF Jeanswear representatives physically or verbally threatened, pressured, or harassed Molina to sign the severance agreement. Accordingly, Molina's evidence fails to show that VF Jeanswear acted wrongfully, coercively, or with the degree of severity " 'sufficient to overcome the mind and will of a person of ordinary firmness.' " *Radford,* 160 N.C.App. at 45, 584 S.E.2d at 818

(quoting *Edwards v. Bowden,* 107 N.C. 58, 60, 12 S.E. 58, 58 (1890)).

■ Finally, Molina's acceptance of the severance benefits precludes his claim that the severance agreement is invalid.

> If [a party] knew the facts and circumstances of the execution of the release and knew its provisions, and then accepted its benefits he is thereby estopped to deny its validity. With full knowledge of its contents, he cannot accept the benefits and deny the liabilities of the instrument—he cannot ratify it in part and reject it in part.

*Presnell v. Liner,* 218 N.C. 152, 154, 10 S.E.2d 639, 640 (1940). Though Molina may have been unhappy with the benefits he received, he never attempted to return his severance package or repudiate the agreement. (Pl.'s Mem. Supp. Mot. Summ. J., Molina Dep. at 55, 59.) Instead, Molina willingly collected over $140,000.00 worth of benefits from VF Jeanswear, knowing that his consideration for those benefits was the release of his claims against the company. Molina cannot accept VF Jeanswear's consideration under the severance agreement but disclaim his corresponding obligations. *See Goodwin v. Webb,* 357 N.C. 40, 40, 577 S.E.2d 621, 621 (2003) (reasoning that wife who willingly accepted benefits of separation and property settlement agreement was estopped from challenging the agreement); *Livingston v. Adams Kleemeier Hagan Hannah & Fouts, P.L.L.C.,* 594 S.E.2d 44, 49 (N.C.App.2004) (affirming summary judgment for defendants on basis of release agreement because plaintiff accepted benefits provided in agreement and never attempted to repudiate agreement). Therefore, the court will enforce the severance agreement as written, and summary judgment will be granted to VF Jeanswear on its breach of contract claim.

## IV. Uncontested Claims

### A. Unfair and deceptive trade practices claim

■ Molina maintains that VF Jeanswear's allegations do not constitute a violation of North Carolina's unfair and deceptive trade practices statute, N.C. Gen. Stat. § 75–1.1, because "a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under N.C.G.S. § 75–1.1." *Branch Banking & Trust Co. v. Thompson,* 107 N.C.App. 53, 61, 418 S.E.2d 694, 700 (1992). VF Jeanswear has not contested Molina's argument. Therefore, the court will grant Molina's motion for summary judgment on this claim.

### B. Punitive damage request

■ Molina also challenges VF Jeanswear's request for punitive damages on its breach of contract claim. *See Shore v. Farmer,* 351 N.C. 166, 170, 522 S.E.2d 73, 76 (1999) ("[P]unitive damages should not be awarded in a claim for breach of contract."); *see also Cash v. State Farm Mut. Auto. Ins. Co.,* 137 N.C.App. 192, 200, 528 S.E.2d 372, 377 (2000) (citing *Shore v. Farmer,* 133 N.C.App. 350, 359–60, 515 S.E.2d 495, 501–02 (1999) for proposition that "[p]unitive damages are not allowed even when the breach [of contract] is willful, malicious or oppressive"). Because VF Jeanswear has not presented evidence to refute Molina's assertion, the court will grant summary judgment to Molina on this claim.

## V. VF Jeanswear's Request for Attorney's Fees

■ Molina contends that VF Jeanswear cannot recover attorney's fees if it prevails on its breach of contract claim. As a general rule, attorney's fees are not available in North Carolina without express statutory authority, even if the par-

ties' contract provides otherwise. *Potter v. Hilemn Labs., Inc.,* 150 N.C.App. 326, 336–37, 564 S.E.2d 259, 266 (2002). However, in *Carter v. Foster,* 103 N.C.App. 110, 404 S.E.2d 484 (1991), the Court of Appeals of North Carolina affirmed an award of attorney's fees pursuant to the terms of a negotiated settlement agreement. Though the fees were not statutorily authorized, the court reasoned that giving effect to the parties' agreement comported with the well-established policy of encouraging settlement of disputes and enforcing settlement contracts. *Id.* at 117, 404 S.E.2d at 489.

Molina suggests that *Carter* is distinguishable from the instant case because Molina signed a severance agreement, not a settlement agreement. However, the Court of Appeals has concluded that the execution of releases and waivers of legal claims "clearly constitutes an 'agreement settling all ... claims,'" and that such agreements may include enforceable provisions for attorney's fees under *Carter.* *Bromhal v. Stott,* 116 N.C.App. 250, 255, 447 S.E.2d 481, 484 (1994) (omission in original) (quoting *Carter,* 103 N.C.App. at 115, 404 S.E.2d at 488); *see also Carter,* 103 N.C.App. at 115, 404 S.E.2d at 488 (noting that a contract "purporting to terminate a controversy" can allow for the payment of attorney's fees "whether [the contract is] denominated accord and satisfaction or compromise and settlement"). *See generally Tellado,* 119 N.C.App. 529, 459 S.E.2d 27 (1995) (affirming judgment for defendant on defendant's breach of contract claim without vacation or discussion of fee award where plaintiff sued defendant in contravention of "Severance and Release Agreement" containing provision for attorney's fees in the event of breach). Molina's claim that the severance agreement is not a settlement is little more than semantics. In consideration for the benefits he received, Molina promised to release VF Jeanswear from all claims and

"agree[d] that the Company would be entitled to recovery of its cost and attorney fees incurred as a result of [a material breach of the agreement]." (Compl. Ex. A, Employment Voluntary Termination Agreement & Release at 3.8.) Therefore, under the reasoning of *Carter,* VF Jeanswear may recover reasonable attorney's fees as a result of Molina's breach.

## VI. *Molina's Counterclaim*

In addition to defending against VF Jeanswear's claims, Molina brings a breach of contract claim of his own. Specifically, Molina contends that VF Jeanswear failed to compensate him for all of his relocation expenses. Under the severance agreement, VF Jeanswear promised to pay "to relocate Employee, his family, and household goods to Honduras or other country to [sic] his election, provided that the total cost is equivalent to the relocation to Honduras, according to the VF Relocation Policy, if the Employee opts relocation by June 1, 2002." (Compl., Ex. A, Employment Voluntary Termination Agreement & Release at 1.3.) The Relocation Policy referenced in the severance agreement provides that VF Jeanswear will pay to move and insure the relocating employee's household goods and will pay lodging and meal expenses incurred the night before the move, en route, and the night after the move. (Pl.'s Mem. Supp. Mot. Summ. J., Rule 30(b)(6) Dep. of VF Jeanswear Ltd. P'ship, Dep. Ex. 7.).

Molina does not dispute that VF Jeanswear paid over $35,000.00 to cover the expenses delineated in the Relocation Policy. Instead, he argues that he should receive an additional $15,588.75 for other expenses generally associated with his move. These alleged expenses include such items as the costs to move his pet to Honduras, meals for the week before the move and the month after the move, and dry cleaning expenses incurred two weeks

after the move.[6] (Pl.'s Mem. Supp. Mot. Summ. J., Molina Dep. at 99–101; Molina Dep. Ex. 6.) Molina contends that other VF Jeanswear policies, including policies which provide benefits to employees temporarily assigned to other countries, entitle him to reimbursement for these expenses. (Mem. Supp. Def.'s Resp. Pl.'s Mot. Summ. J. at 12.)

■ Regardless of what Molina believes he should receive, the severance agreement unambiguously states that the Relocation Policy governs VF Jeanswear's relocation obligation. Under the Relocation Policy, Molina cannot legitimately claim these expenses.[7] Moreover, Molina knew before he signed the severance agreement that the terms of the agreement would constitute the limit of VF Jeanswear's expense coverage. On two occasions, he met with VF Jeanswear attorneys to discuss his alleged entitlement and was informed that if he accepted the company's severance offer, he would not receive any benefits other than those detailed in the agreement. By signing the agreement, Molina "acknowledge[d] that this agreement is the exclusive agreement for benefits to be paid to Employee by the Company" and that "no other monies or benefits are owed to him other than those benefits for which he is eligible under this agreement." (Compl., Ex. A, Employment Voluntary Termination Agreement & Release at 4.1.) Molina has no evidence that VF Jeanswear failed to comply with the severance agreement, which precludes his entitlement to additional benefits. Thus, Molina cannot sustain a claim for breach of contract.[8] *See Long v. Long*, 160

---

6. Interestingly, Molina did not submit a request for payment of these expenses to VF Jeanswear until discovery in this matter had begun.

7. Notwithstanding the fact that the severance agreement explicitly limits Molina's relocation benefits to those recoverable under the Relocation Policy, Molina does not qualify for some of the policies he cites. For example, Molina seeks to obtain a repatriation allowance, but under VF Jeanswear's repatriation policy, only workers remaining in VF Jeanswear's employ after repatriating are eligible for this benefit. (Pl.'s Mem. Supp. Mot. Summ. J., Rule 30(b)(6) Dep. of VF Jeanswear Ltd. P'ship at 29–30.)

8. Even if Molina could demonstrate that he was eligible for benefits in excess of those provided in the severance agreement, his acceptance of additional payments for car transport and hotel expenses acts as an accord and satisfaction of his claims. Under North Carolina law,

an 'accord' is an agreement whereby one of the parties undertakes to give or perform, and the other to accept, in satisfaction of a claim, liquidated or in dispute, and arising either from contract or tort, something other than or different from what he is, or considered himself entitled to; and a 'satis-

faction' is the execution or performance, of such agreement.

*Sharpe v. Nationwide Mut. Fire Ins. Co.*, 62 N.C.App. 564, 565, 302 S.E.2d 893, 894 (1983).

In this case, after Molina signed the severance agreement, he proposed that VF Jeanswear also pay to transport and insure his car and increase his hotel expense allotment. The company consented but informed Molina that "these additional considerations will constitute the limit of our willingness to provide any benefits above and beyond those contained in your severance agreement." (Pl.'s Mem. Supp. Mot. Summ. J., Molina Dep. Ex. 7, E-mail from Tucker to Molina, July 3, 2002.) Molina responded, "Thank you for this effort" and e-mailed VF Jeanswear his bank account number to deposit the funds. (Pl.'s Mem. Supp. Mot. Summ. J., Molina Dep. Ex. 7, E-mail from Molina to Tucker, July 3, 2002.) As evidenced by his letters and discussions with VF Jeanswear attorneys, Molina believed he was entitled to more benefits than the severance agreement offered. After negotiating with the company over e-mail, Molina accepted the car transport and hotel payments conditioned on VF Jeanswear's unequivocal refusal to provide further remuneration. This acceptance is sufficient to demonstrate an accord and satisfaction of any potential claim for further benefits. *See Zanone v. RJR Nabisco, Inc.*, 120

N.C.App. 664, 668, 588 S.E.2d 1, 4 (2003) (noting that a party claiming breach of contract must demonstrate a substantial failure to perform a contractual obligation); *Williams v. E. Coast Sales, Inc.,* 59 N.C.App. 700, 703, 298 S.E.2d 80, 82 (1982) (finding no error in trial court's failure to instruct jury on breach of contract when legal duty plaintiff alleged did not arise out of the contractual relationship between the parties).

## CONCLUSION

For the foregoing reasons, the court will grant VF Jeanswear's motion and deny Molina's motion for summary judgment on VF Jeanswear's breach of contract claim. VF Jeanswear's damages have yet to be determined, but the damage award may include reasonable attorney's fees in connection with the breach of contract claim. VF Jeanswear is not entitled to punitive damages.

The court also will grant Molina's motion for summary judgment on VF Jeanswear's claim for unfair and deceptive trade practices. Finally, VF Jeanswear's motion for summary judgment on Molina's counterclaim will be granted.

An order and judgment in accordance with this memorandum opinion shall be entered contemporaneously herewith.

### ORDER and JUDGMENT

For the reasons set forth in the memorandum opinion filed contemporaneously herewith,

IT IS ORDERED that Plaintiff's motion for summary judgment [Doc. # 20] on Plaintiff's breach of contract claim is **GRANTED**.

IT IS FURTHER ORDERED that Defendant's motion for summary judgment [Doc. # 23] on Plaintiff's breach of contract claim is **DENIED**.

IT IS FURTHER ORDERED that Defendant's motion for summary judgment [Doc. # 23] on Plaintiff's claim for punitive damages is **GRANTED**.

IT IS FURTHER ORDERED that Plaintiff's motion for summary judgment [Doc. # 20] on Defendant's counterclaim for breach of contract is **GRANTED**.

IT IS FURTHER ORDERED that Defendant's motion for summary judgment [Doc. # 23] on Plaintiff's claim for unfair and deceptive trade practices is **GRANTED**.

N.C.App. 768, 770–75, 463 S.E.2d 584, 586–89 (1995) (reasoning that employer's statement that check would constitute "full and final payment" of severance benefits, combined with employee's acceptance and cashing of the check, established an accord and satisfaction barring employee's claims for additional benefits).